UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES A.,[1]

        Plaintiff,

     v.

ANDREW M. SAUL, Commissioner, Social Security Administration,

        Defendant.

Case No. 19-cv-00104-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 14, 19

## I.  INTRODUCTION

Plaintiff James A. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Nancy A Berryhill, then-Acting Commissioner of Social Security,[2] denying Plaintiff's claim for disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 14 (Pl.'s Mot.), 19 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.  BACKGROUND

**A.  Age, Education and Work Experience**

Plaintiff is 55 years old.  AR 234.  He completed the 10th grade and earned his G.E.D.  AR 48, 282.  In the past, he worked as a sheet metal worker journeyman.  AR 70, 273.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] This action was originally brought against Acting Commissioner Nancy Berryhill.  Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul was automatically substituted as the Defendant.

**B.      Medical Evidence**

Plaintiff injured his tailbone in a kayaking accident in 2009.  AR 713.  He underwent spinal surgery in June 2012, excision of a central canal tumor at the L4-5 and S1 level, L4 through S1 laminectomies, and a multilevel spinal fusion (L4 through S1 levels).  AR 349-50, 358-59 (March 2012 lumbar MRI scan), 367-68, 392-93 (operative report).

**1.      Del Norte Community Health Center**

Plaintiff received treatment at Del Norte Community Health Center beginning in August 2014 from Jesse Vos, PA-C., Dustin Jacot, PA, and Melody Pope, FNP, under the supervision of Warren Rehwaldt, M.D.  AR 447-75, 482-510, 516-23, 612-23, 673-79, 689-90, 717-23.  On August 8, 2014, Plaintiff reported chronic back pain, increased neck pain, and difficulty sleeping because of pain.  AR 454-56.  He exhibited intact grip strength, intact strength, intact gait and coordination, and no focal neurological deficits during these visits.  AR 454, 456.  PA Vos observed "mild" limitation in range of motion of his lower extremities, tenderness to palpation of his paravertebral muscles, and limited flexion and extension on toe touch.  AR 455-56.  PA Vos prescribed ibuprofen and Baclofen, a muscle relaxant.  AR 456-57.

On August 22, 2014, Plaintiff reported he did not experience improvement with Baclofen or ibuprofen and that his sleep was poor because of pain.  AR 453.  PA Vos observed Plaintiff had tenderness to palpation of his paravertebral muscles, limited lumbar motion, and limited lower extremity motion.  AR 454.  PA Vos diagnosed back pain status post laminectomy with spinal fusion, and chronic pain disorder.  *Id.*  PA Vos prescribed Hydrocodone.  *Id.*

On September 27, 2014, Plaintiff reported improved change in pain level and improved sleep with medication, but with increased nightmares.  AR 451.  He also reported his current medication allowed him to continue multiple activities of daily living that he otherwise would be unable to complete.  *Id.*  Plaintiff reported his pain level at 3/10 and that he was riding a bike two times per week.  *Id.*  PA Vos observed Plaintiff had tenderness to palpation of his paravertebral muscles, limited lumbar motion, and limited lower extremity motion.  AR 452.  PA Vos refilled Plaintiff's Hydrocodone and Baclofen prescriptions.  *Id.*

On January 3, 2015, Plaintiff reported that his pain was controlled with Baclofen and

Hydrocodone, and that his daily pain level, activity, and level of function "are noticeably improved when using narcotic medications." AR 449. His pain level remained at 3/10 and he continued riding a bike. *Id.* PA Vos observed Plaintiff had tenderness to palpation of his paravertebral muscles, limited lumbar motion, and limited lower extremity motion. AR 450. PA Vos refilled Plaintiff's Hydrocodone and Baclofen prescriptions. *Id.*

On February 20, 2015, Plaintiff reported that his pain continued to be controlled with Baclofen and Hydrocodone, and that he continued riding a bike. AR 447. On examination, PA Vos observed Plaintiff had tenderness to palpation of his paravertebral muscles, limited lumbar motion, and limited lower extremity motion. AR 448. PA Vos refilled Plaintiff's Hydrocodone and Baclofen prescriptions and referred him for a physical therapy evaluation for back and hip pain. *Id.* A February 25, 2015 hip x-ray revealed mild degenerative changes of his hips. AR 518.

On April 10, 2015, Plaintiff reported that his pain continued to be controlled with Baclofen and Hydrocodone, but he had been unable to ride a bike due to weather and maintenance issues, although he planned to start again the following week. AR 519. PA Vos observed Plaintiff had tenderness to palpation of his paravertebral muscles, limited lumbar motion, and limited lower extremity motion. AR 520. PA Vos continued Plaintiff's Hydrocodone and Baclofen prescriptions. *Id.*

On May 7, 2015, Plaintiff reported that his pain was controlled with Baclofen, Hydrocodone, and physical therapy. AR 521. He requested continued physical therapy treatment rather than having further imaging and working up. *Id.* PA Vos observed he had tenderness to palpation of his paravertebral muscles, limited lumbar motion, and limited lower extremity motion. AR 523. PA Vos refilled his Hydrocodone and Baclofen prescriptions. *Id.*

On July 30, 3015, Plaintiff reported falling one month prior and injuring his right knee. AR 623. Giora Praff, M.D., prescribed nonsteroidal anti-inflammatory drugs for three days and quad exercises. *Id.*

On August 11, 2016, Plaintiff reported "moderate" relief with Hydrocodone but continued low back pain. AR 676. PA Jacot noted that Plaintiff had slight weakness with lower extremity flexion and palpation of the thoracic spine, but full 5/5 strength upon extension. AR 677.

Plaintiff's straight leg raise testing was negative bilaterally. *Id.* PA Jacot continued his prescription for Hydrocodone. *Id.*

On February 4, 2017, Plaintiff reported back and neck pain. *Id.* He denied experiencing joint pain but complained of falling two to three times per week. AR 678. His left leg buckled when walking, and his last fall was one week prior. *Id.* He reported that he did not use a cane consistently but did use one to walk on "some days." *Id.* NP Pope observed he had tenderness to palpation of the cervical and lumbar spine. *Id.* Upon Dr. Rehwaldt's referral, Plaintiff underwent a lumbar spine CT scan in February 2017. AR 680-81. This scan detected "moderately severe" degenerative disc disease at the L5-S1 level with grade 1 anterolisthesis (slipping of the vertebra). AR 680. There was no evidence of central spinal stenosis or neural foramen stenosis. AR 681.

On March 4, 2017, Plaintiff saw NP Pope for a follow up on his back pain. AR 689. She reported that Plaintiff moved slowly, but there was no leg drag and no limping. *Id.*

On June 15, 2017, NP Pope noted a recent nerve conduction study of Plaintiff's legs revealed large fiber neuropathy in the left leg. AR 720. During that visit, Plaintiff informed NP Pope that he "determined that he has to use the cane. He is trying to get used to using it." *Id.* NP Pope ordered a cervical spine x-ray and refilled his pain medications. AR 721. The x-ray revealed mild to moderate multilevel cervical degenerative changes from the C3 to T1 levels with hypertrophy, spondylolistheses, and neuroforaminal stenosis (narrowing), most predominant at the C3-4 an C6-7 levels. AR 716.

At a July 20, 2017 visit with NP Pope, Plaintiff had limited range of motion in his neck and reported that he could not tolerate sitting for more than 20 minutes. AR 721-22. Plaintiff was able to stand and move in the examination room. AR 722. NP Pope continued his Baclofen prescription and counseled him on weight management. *Id.*

On July 27, 2017, Dr. Rehwaldt and NP Pope completed a check-box form assessment of Plaintiff's physical work capacities. AR 725. They opined that Plaintiff could not perform even sedentary work activities.[3] *Id.* Plaintiff could sit for less an hour in an eight-hour workday and

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as

4

stand/walk for less than an hour in an eight-hour workday. *Id.* He required the use of a cane because of chronic back, hip and knee pain, and an increase in falls. *Id.* The cane was medically necessary as of February 4, 2017. *Id.* Dr. Rehwaldt and NP Pope concluded Plaintiff would miss four or more days of work a month because of his chronic pain disorder, and that he was unable to concentrate on work due to interruptions from his chronic pain disorder more than 30% of a workday. *Id.*

### 2. Pacific Northwest Physical Therapy

Plaintiff underwent physical therapy at Pacific Northwest between April and July 2015 and September 2015 and February 2016. AR 528-29, 565-66, 624-25, 670-71.

At an initial evaluation on April 2, 2015, Plaintiff reported increased left leg pain since his surgery, which was aggravated by sitting, standing, lying down, walking climbing stairs, performing household activities, squatting, and sustained bending. AR 528. He also reported he occasionally lost his balance while walking and fell when his left leg "becomes suddenly weak." *Id.* Examination revealed impaired motor control of his left lower extremity during open chain activities and 3+/5 strength in his left lower extremity. *Id.* At a subsequent visit on April 24, 2015, Plaintiff reported improved balance on his left lower extremity and improved control of his left lower extremity. AR 530, 539. The therapist noted "[g]ood tolerance of exercise." AR 538.

At his May through July 2015 physical therapy sessions, Plaintiff had some improvement with physical therapy but still had difficulty sleeping because of pain, occasional loss of balance, and difficulty with "upright activities (standing/walking/household activities)." AR 541, 545, 547, 549, 551, 553, 555, 557, 559, 561, 563, 565. He had frequent muscle spasms in all muscle groups of his left lower extremity during movement. *See e.g.*, AR 563, 565, 588, 590. However, Plaintiff reported improved balance and acknowledged that he had no falls since beginning physical therapy. AR 563. Plaintiff progressed from a half to a full squat and was able to perform higher-level balance challenges. AR 564. His physical therapist reported that his lower extremity

---

one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

balance and coordination would likely continue to improve with physical therapy. *Id.*

Plaintiff participated in additional rounds of physical therapy in September through November 2015 and January through February 2016. AR 624-71. He consistently reported difficulties with upright activities such as standing and walking and reported waking up frequently because of pain. AR 624, 626, 628, 630, 632, 634, 636, 638, 640, 642, 644, 646, 648, 650, 652, 658, 660, 662, 664, 666, 668, 670. He also reported that he felt stronger and had better balance since starting physical therapy. *Id.* (all). Plaintiff displayed at least 4+/5 strength in his left lower extremity and progress with balance and functional abilities. AR 670-71. He continued to demonstrate impaired motor control of his left lower extremity during activities because of frequent spasms. AR 632, 634, 636, 638, 640, 642, 644, 646, 648, 650, 652, 658, 660, 662, 664, 666, 668, 670.

At the conclusion of physical therapy in February 2016, Plaintiff reported that he did not have any recent history of falls. AR 624. He reported difficulties with upright activities but stated that his balance and strength was improved. *Id.* His therapist found he did well with higher-level balance challenges, noting that his balance and coordination would likely continue to improve with physical therapy. AR 625.

### 3. Agency Reviews

#### a. Sohelia Benrazavi, M.D.

In January 2014, Sohelia Benrazavi, M.D., performed a consultative orthopedic examination of Plaintiff. AR 431-43. Dr. Benrazavi's review of Plaintiff's background records was limited to May and June 2012 records related to his June 2012 spinal surgery. AR 438. Plaintiff stated he underwent a spinal fusion procedure in June 2012 but had continued back pain and left foot numbness. AR 435. He rated his pain as a "seven out of ten without pain medication and "four or five out of ten" when he took Advil. *Id.* Dr. Benrazavi reported that Plaintiff could sit and stand with normal posture, get on and off the examination table without difficulty, walk without an assistive device, and walk on toes and heels and perform tandem gait. AR 438. Plaintiff had slight weakness in his left big toe and foot but had full 5/5 strength elsewhere in his upper and lower extremities. AR 437. Dr. Benrazavi noted that Plaintiff had normal muscle bulk

and no evidence of atrophy. *Id.* He had normal range of motion in his shoulders, elbows, wrists, hips, knees, and ankles. *Id.* Dr. Benrazavi described Plaintiff's cervical spine range of motion as "mildly diminished" but reported no evidence of cervical radiculopathy. AR 437, 439. Plaintiff also had diminished sensation in his left lower extremity but normal sensation elsewhere in his extremities. AR 438. He had intact reflexes. AR 437.

Based on the available information, Dr. Benrazavi opined Plaintiff retained the capacity to perform work at the following exertional levels: lifting up to 20 pounds occasionally; carrying up to 10 pounds frequently; sit/stand/walk 6 hours at one time and up to 6 hours in an 8-hour work day; use his hands frequently for reaching, handling, fingering, feeling, and pushing/pulling; use his feet frequently for operation of foot controls; and perform activities including shopping, traveling, ambulating without an assistive device, walk a block at a reasonable pace, use public transportation, climb steps at a reasonable pace, prepare simple meals and feed himself, care for his personal hygiene, and sort, handle and use paper/files. AR 431-34; 440-42.

### b. M. Acinas, M.D.

On May 5, 2015, M. Acinas, M.D., completed a Residual Functional Capacity[4] assessment. AR 132-33. Dr. Acinas opined Plaintiff retained the capacity to perform work at the following exertional levels: lifting/carrying up to 20 pounds occasionally and up to 10 pounds frequently; sit/stand/walk up to 6 hours in an 8-hour work day; no limitations on pushing/pulling, except as limited for lifting/carrying; frequently climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; unlimited balancing; occasionally stoop (bending at the waist) and crouch (bending at the knees), and crawl; and frequently kneel. *Id.* To support these conclusions, Dr. Acinas cited Plaintiff's intact gait upon physical examination. AR 131, 133. Dr. Acinas noted no manipulative, visual, communicative, or environmental issues. AR 133.

### c. H. Crowhurst, M.D.

On August 28, 2015, H. Crowhurst, M.D., completed another RFC assessment. AR 145-

---

[4] As explained in more detail below, residual functional capacity ("RFC") refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1).

47. Dr. Crowhurst concurred with Dr. Acinas's conclusions regarding Plaintiff's exertional abilities but found he required the option to alternate between sitting or standing every hour. AR 145. Dr. Crowhurst concluded that Plaintiff could perform all postural activities occasionally, aside from climbing ladders, ropes, and scaffolds (which he could not perform). AR 145-46. Dr. Crowhurst also concluded that Plaintiff should avoid work at heights or with heavy machinery. AR 146-47. Dr. Crowhurst supported his conclusions by citing Dr. Benrazavi's objective clinical findings, including Plaintiff's largely normal strength and sensation. AR 147.

### III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

Plaintiff was previously granted a closed period of disability through a prior May 2014 Administrative Law Judge ("ALJ") decision that found him disabled from January 4, 2011 through December 31, 2012. AR 29; AR 110-27 (May 27, 2014 ALJ decision). He then filed an application for disability insurance benefits on March 3, 2015, alleging an onset date of disability of May 28, 2014. AR 22, 42, 234-40.[5] On May 6, 2015, the agency denied Plaintiff's claim, finding he did not qualify for disability benefits. AR 151-55. Plaintiff subsequently filed a request for reconsideration, which the agency denied on September 1, 2015. AR 159-63. On September 10, 2015, Plaintiff requested a hearing before an ALJ. AR 165-66. ALJ Mary Beth O'Connor conducted a hearing on July 28, 2017. AR 37-78. Plaintiff testified in person at the hearing and was represented by counsel, Kenneth Collins. The ALJ also heard testimony from Vocational Expert ("VE") Bernard Preston.

#### A.     Plaintiff's Testimony

Plaintiff testified he had not worked since December 2010 and could not work because of pain in his neck, back, hip, and leg. AR 48-50, 54-55, 57, 67. Since the May 2014 ALJ decision, his conditions had worsened such that he had increased neck and hip pain and more difficulty with

---

[5] The record contains multiple onset dates. Plaintiff originally listed the onset date as January 1, 2011. AR 234. In a July 21, 2017 hearing brief, his attorney amended the date to February 28, 2014. AR 337. However, at the July 28, 2017 hearing before the ALJ, Plaintiff's attorney amended the onset date to "the day after the prior ALJ decision," but inaccurately stated it as May 22, 2014. AR 42. The ALJ then used the February 28, 2014 onset date in her decision, citing to the July 2017 hearing brief. AR 22. Regardless, given that the prior ALJ's decision was issued on May 27, 2014, *see* AR 127, the Court accepts May 28, 2014 as the correct amended onset date.

balance, walking, and falling down.  AR 49-50.  In 2014, Plaintiff was falling approximately one time a week but did not use a cane because of "[v]anity issues.  I just didn't feel like I was old enough and it made me feel old and less superior."  AR 51-52.  From 2015 on he was losing his balance more and falling more frequently: "my left leg would just suddenly buckle on me and it was almost like stepping into a hole in the ground."  AR 52.  This happened about once a week and had been going on for three to four years.  AR 64.  Because of his increased falls and difficulty walking, Plaintiff made modifications to his home in 2015, redoing the front stairs so that each step was wider to assist in climbing the four steps into the house, and he also added railings to the steps.  AR 52-54.

Plaintiff testified that his pain had increased since 2014: "If I try to sit too long, the pain gets intense in my back and neck and standing, my lower back, if I try to stand in one place for a while."  AR 54-55.  He testified that since 2014 he could only stand in one place for 20 to 30 minutes and then his back started to hurt and his legs started to shake.  AR 55.  After that he needed to lay down for a while and stretch his hamstrings.  AR 56.  He would be unable to get the relief he needed by simply alternating sitting and standing: "I normally have to lay down for like an hour, and a half in the daytime in the mornings, and then usually in the afternoon to stretch." *Id.*  He had to lay down at least twice for an hour and a half each time during a typical day.  AR 57.  "It helps alleviate the pain in my back and the neck and the hips and then it also gives me a chance to take a little nap because I don't really sleep that well at night."  AR 56.  Plaintiff testified he had difficulty sleeping at night, sleeping "for maybe an hour, and [sic] hour and a half at a time and then I have to get up and move around for 20 minutes" because "the stiffness and soreness" in his back and hip "gets really bad when you're trying to sleep at night."  AR 56-57.

Plaintiff's neck pain radiated to his left shoulder, arm, and hand, and sometimes his left arm would get numb.  AR 57.  He testified that his left arm "gets a very dead feeling in it" a couple times a week and he "just can't get it comfortable," causing him to not use his left arm "much for anything."  AR 58.  He stated he was "trying to get into" physical therapy for his neck pain.  AR 68.

Plaintiff testified he also experienced numbness in both his feet, mostly the left foot.  AR

62. His left leg "constantly feels like it is asleep, "like it's tingling, and it drives me nuts." AR 64. He described the sensation as "a numbness with tingling and sometime [sic] they're [sic] pain going down it." *Id.* Since 2015, he could walk for ten minutes at a time and then had to either "sit down or just lay down and stretch." AR 66. "Usually I get up and walk around for a little bit, for about 10, 15 minutes and then I'll go and lay down for a little while, an hour and a half and stretch and repeat. Sit down, stand up, walk, lay down." *Id.*

Plaintiff testified that he tried not to lift more than ten pounds at a time because "anything more than ten pounds causes too much pain." AR 68. Bike riding also increased his hip pain. AR 68-69.

**B.      Vocational Expert's Testimony**

The VE classified Plaintiff's past relevant work as a sheet metal worker as skilled at the medium level for purposes of the Dictionary of Occupational Titles[6] but heavy as performed. AR 70-71. He concluded there were no transferable skills from Plaintiff's past work that would permit him to work at the sedentary level of exertion. AR 71.

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age and education with his past work experience and the following limitations: limited to light work,[7] except "[t]he option to sit/stand hourly. Occasionally climb ramps or stairs. Never climb ladders, ropes or scaffolds. Occasionally balance, stoop, kneel, crouch or crawl. Avoid concentrated exposure to

---

[6] The Dictionary of Occupational Titles ("DOT") by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d) (1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c)

[7] Light work is defined by 20 C.F.R. § 404.1567(b) as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

unprotected heights or heavy machinery." *Id.*  In response, the VE testified the hypothetical

individual could not perform Plaintiff's past work as a sheet metal worker but identified jobs he

could perform such as a price marker (DOT 309.587-034), routing clerk (DOT 202.587-038), and

garment sorter (DOT 222.687.014).  AR 71-72.  The VE interpreted the "option to sit/stand

hourly" from the ALJ's hypothetical question to mean "[b]eing able to stand every hour": "I mean

if you start your time at 8, then at 9 you would sit or stand for another hour in a hypothetical

individual."  AR 74.  The VE testified that based upon his experience, this same hypothetical

individual could perform the price marker, routing clerk, and garment sorter occupations even if

they required a cane for ambulation.  AR 75.  The VE concluded that a person who would be off

task more than 15% of any workday would be unable to perform any work.  AR 77.

## C.     ALJ's Decision and Plaintiff's Appeal

On December 4, 2017, the ALJ issued an unfavorable decision finding Plaintiff was not

disabled.  AR 19-31.  This decision became final when the Appeals Council declined to review it

on November 13, 2018.  AR 1-6.  Having exhausted all administrative remedies, Plaintiff

commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On June 7, 2019,

Plaintiff filed the present Motion for Summary Judgment.  On August 19, 2019, Defendant filed

his Cross-Motion for Summary Judgment.

## IV.     STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

U.S.C. § 405(g).  An ALJ's decision to deny benefits must be set aside only when it is "based on

legal error or not supported by substantial evidence in the record."  *Trevizo v. Berryhill*, 871 F.3d

664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  Substantial evidence is "'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)).  It requires "more than a mere scintilla," but "less than a preponderance" of the

evidence.  *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted).  However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks omitted).  A court may not reverse an ALJ's decision because of a harmless error.  *Id.* at 1111 (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (citation and quotation marks omitted).

# V.   DISCUSSION

## A.   Framework for Determining Whether a Claimant Is Disabled

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[8]  20 C.F.R. § 404.1520.  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

---

[8] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since January 1, 2011. AR 24.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease and spinal osteoarthritis. AR 25.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 25.

Before proceeding to step four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(e). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined Plaintiff has the RFC to perform light work "except he requires the option to sit/stand hourly; can occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; and should avoid concentrated exposure to unprotected heights and heavy machinery." AR 26.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial

gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff could not perform his past relevant work. AR 29.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, the ALJ determined "there are jobs that exist in significant numbers in the national economy that the claimant can perform," citing price marker, routing clerk, and garment sorter as representative unskilled occupations. AR 30.

### B.   Plaintiff's Arguments

Plaintiff raises three arguments in this appeal: (1) the ALJ rejected Dr. Rehwaldt and NP Pope's assessment with insufficient reasons; (2) the ALJ erred by rejecting his symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole; and (3) the presiding ALJ was not properly appointed under the Constitution and therefore lacked legal authority to hear and decide his case. Pl.'s Mot. at 6.

### C.   Medical Opinions

Plaintiff first argues the ALJ erred in her consideration of Dr. Rehwaldt and NP Pope's assessment. *Id.* at 6-11. They assessed his work capacities in July 2017, opining that he could not perform even sedentary work activities, his pain caused him to be off-task more than 30% of a workday, and he would miss four or more days of work a month because of his chronic pain disorder. AR 725. The ALJ accorded Dr. Rehwaldt and NP Pope's assessment "little weight," finding it was inconsistent with "the longitudinal medical evidence showing many normal exams as well as normal gait and station, with occasional falls but no often cane use." AR 29. The ALJ also noted the assessment was a "checkbox form, with no evidence or citations provided to

support the findings." *Id.* The ALJ also noted the findings from Dr. Benrazavi, the consultative examiner, "also contradicts" the assessed limitations, "with the undersigned giving greater weight to the consultative examiner's findings." *Id.* Finally, the ALJ noted Plaintiff's cane use "was noted to be very recent with the record otherwise showing until 2017 he did not use it often and with no clear support for the longitudinal need for the cane." *Id.* Plaintiff argues these reasons are insufficient. Pl.'s Mot. at 7. Defendant argues the ALJ properly evaluated the medical opinion evidence because substantial evidence contradicts Dr. Rehwaldt's and NP Pope's assessment. Def.'s Mot. at 2-7.

### 1. Legal Standard[9]

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(3)-(4).

In conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "By rule, the Social Security Administration [SSA] favors the opinion of a

---

[9] Rules regarding the evaluation of medical opinion evidence were recently updated, but the updates were made effective only for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). As Plaintiff filed his claim before March 27, 2017, the Court evaluates the medical opinion evidence in his case under the older framework as set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) and in Social Security Ruling 96-2p.

treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If a claimant has a treatment relationship with a provider, and clinical evidence supports that provider's opinion and is consistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

In the Ninth Circuit, an ALJ must provide specific and legitimate reasons for discounting a treating physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ "complied with *Magallanes* and provided specific and legitimate reasons for rejecting [the treating doctor's] opinion"); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (an ALJ sufficiently discounts a treating opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings") (citation omitted).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [agency] considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the [Social Security] Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record.

*Id.* (citing 20 C.F.R. § 404.1527(d)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See id.* at 632 (citing SSR 96-

2p, 1996 WL 374188, at *4 (July 2, 1996)).[10] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p at *4.

### 2. Analysis

Here, the Court finds the ALJ provided specific and legitimate reasons for rejecting Dr. Rehwaldt and NP Pope's assessment that are supported by substantial evidence. First, the ALJ properly found that Dr. Benrazavi's opinion about Plaintiff's ability to perform light work contradicted the assessment. AR 29. An ALJ properly rejects a treating physician's opinion where it is contradicted by other statements and assessments of the claimant's medical condition. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2014). Dr. Benrazavi's opinion is substantial evidence supporting the ALJ's decision because it rested upon the objective clinical findings she obtained during her independent examination. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In particular, Dr. Benrazavi's conclusions about Plaintiff's ability to perform light work were grounded in her observations of his normal and unassisted gait, normal ability to perform orthopedic maneuvers, nearly full strength, and lack of atrophy. AR 437-39. Plaintiff argues the ALJ erred in relying upon Dr. Benrazavi's consultative examination because it was remote in time. Pl. Mot. at 9-10. However, Plaintiff's treatment providers – including Dr. Rehwaldt – largely replicated Dr. Benrazavi's findings about his intact gait and strength and lack of atrophy and neurological deficits in subsequent physical examinations. AR 448, 450, 452, 454, 456, 520, 523, 693-95. Given that Dr. Benrazavi's opinion was consistent with the objective clinical findings that she and others obtained, it provides sufficient evidence to support the ALJ's decision. *See Biestek*, 139 S. Ct. at 1154 ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning

---

[10] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20 C.F.R. § 402.35(b)(1). The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." *Chavez v. Dep't of Health and Human Serv.*, 103 F.3d 849, 851 (9th Cir. 1996).

17

of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citations and internal quotations omitted); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

Plaintiff also argues the ALJ erred in finding Dr. Rehwaldt and NP Pope's assessment was at odds with the longitudinal treatment records. Pl.'s Mot. at 8. However, an ALJ may properly reject a treating physician's opinion by noting that the physician's conclusions regarding the claimant's functional limitations "did not mesh with her objective data or history." *Tommasetti*, 533 F.3d at 1041. Here, the ALJ reasonably found that Dr. Rehwaldt and NP Pope's claims about Plaintiff's inability to perform any significant standing or walking were inconsistent with Dr. Rehwaldt's (and PA Vos's and Dr. Benrazavi's) findings regarding his intact and unassisted gait throughout the relevant adjudicatory period. AR 29, 438-39, 448, 450, 452, 454, 456, 520, 523, 695, 725. Plaintiff's treatment records from Pacific Northwest – which revealed that he had improved balance, coordination, and strength – similarly failed to corroborate their claims about his impaired balance. AR 530, 539, 563-64, 624, 670-71. Although Dr. Rehwaldt and NP Pope opined that Plaintiff was largely unable to use his upper extremities, the ALJ noted that he consistently had normal strength (including grip strength) and coordination and no focal neurological deficits during visits with Dr. Rehwaldt and his other examining and treating sources. AR 27, 437, 439, 448, 450, 452, 454, 456, 520, 523, 694-95, 725; *see Matney v. Sullivan*, 981 F.2d 1016, 1019-20 (9th Cir. 1992) (the ALJ properly rejected treating physicians' opinions by noting that the claimant had no evidence of significant motor loss, muscle weakness, or sensory or reflex loss).

Plaintiff also takes issue with the ALJ's decision to discount Dr. Rehwaldt and NP Pope's assessment because it is set forth in a check-box form. Pl.'s Mot. at 9. He argues "it is error to

discount check-box questionnaires as insufficient to support the treating source assessments." *Id.* (citing *Trevizo*, 871 F.3d at 677 n.4) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments."). It is true that an ALJ cannot reject a treating physician's opinion just because it was expressed on a check-box form because such forms, if based on significant experience with the claimant and supported by numerous records, are "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison*, 759 F.3d at 1013. However, the opinion must still be supported by treatment notes. *Molina*, 674 F.3d at 1112 (concluding that lack of support by clinical findings is a germane reason to reject a check-box opinion); *Batson*, 359 F.3d at 1195 (finding that ALJ properly disregarded conclusory evidence in the form of a checklist that lacked supportive objective evidence and was contradicted in other parts of the record); *Tristan v. Berryhill*, 752 F. App'x 516, 517 (9th Cir. 2019) (ALJ properly rejected "checklist format" medical opinion because it was inconsistent with medical source's own treatment notes); *Hatfield v. Berryhill*, 768 F. App'x 629, 631 (9th Cir. 2019) (affirming ALJ's decision to assign reduced weight to physician's check-box form opinion "because it was inconsistent with other medical evidence in the record and lacked explanation."); *Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (finding the ALJ properly discredited medical opinion and did not err in assigning check-box forms little to no weight where form was inconsistent with objective medical evidence); *compare with Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (ALJ improperly rejected opinion where physician's "extensive notes" were consistent with check-box forms) (citing *Garrison*, 759 F.3d at 1014).

Plaintiff points to a summary of his treatment at Del Norte that accompanied Dr. Rehwaldt and NP Pope's assessment as providing support for their check-box form conclusions. Pl.'s Mot. at 9; AR 724. But Plaintiff mischaracterizes this evidence because it was not a summary they prepared; instead, Plaintiff's attorney during the administrative proceedings admitted that he prepared this summary. AR 724 (summary "Prepared by Kenneth J. Collins, Attorney at Law"). This summary omits any mention of Dr. Rehwaldt's and PA Vos's findings regarding Plaintiff's

intact gait, coordination and strength and lack of focal neurological abnormalities, as well as Plaintiff's admissions to his treatment providers at Del Norte that pain medication alleviated his symptoms and improved his activity level. AR 27, 447-52, 454, 456, 519-21, 523, 676, 724. Further, Dr. Rehwaldt and NP Pope's check-box assessment does not reconcile these objective clinical findings and Plaintiff's admissions with their conclusions about his alleged disabling physical limitations. AR 725. The ALJ therefore reasonably discounted their check-box opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming the ALJ's rejection of a physician's opinion where the physician's assessed limitations "were not supported by any findings made by any doctor" and were inconsistent with the claimant's treatment history); *Young v. Heckler*, 803 F.2d 963, 967-68 (9th Cir. 1986) (an ALJ properly rejected a treating source's opinion when "all the earlier medical reports, including those of [the treating source]" contradicted a finding of disability and the treating source's opinion lacked detailed clinical findings).

Finally, Plaintiff argues the ALJ erred in stating that there was no support in the record for his need for a cane because the record reflects he testified that he did not use a cane initially because he was embarrassed and, in their July 27, 2017 check-box assessment, Dr. Rehwaldt and NP Pope stated that a cane was medically necessary as of February 2017. Pl.'s Mot. at 10 (citing AR 51-52, 725). Plaintiff provides no legal authority in support of this argument and, beyond Dr. Rehwaldt and NP Pope's check-box opinion, he cites no other medical evidence establishing that a cane is medically necessary. In contrast, the Court notes the VE testified that the hypothetical individual posed by the ALJ could perform the price marker, routing clerk, and garment sorter occupations even if he required a cane for ambulation. AR 75.

Thus, because provided specific and legitimate reasons for his evaluation of the medical opinions, and substantial evidence supports the ALJ's findings, the decision must be affirmed.

### D. Plaintiff's Testimony

Plaintiff testified he was unable to work because of increased pain in his neck, back, hip, and leg. AR 49-50, 54-55, 57, 67. He stated that he frequently lost his balance and fell and was only able to stand in one place for twenty to thirty minutes before his back pain increased and his legs started to shake. AR 52-56, 64. Plaintiff also testified that he had to lay down at least twice a day for an hour and a half each time because of pain. AR ¶¶ 56-57. The ALJ rejected Plaintiff's statements, finding they were not supported by the objective medical evidence, including a history of "conservative, mild, and routine treatment," and that his pain was controlled with medications that allowed him to perform his daily activities, including long bike rides. AR 27.

Plaintiff argues the ALJ's reasons for rejecting his testimony are insufficient because, although she found his statements were inconsistent with the record, "at no point in the ALJ's discussion of the medical evidence did the ALJ establish how that evidence was inconsistent with any particular reported symptoms." Pl.'s Mot. at 12-13. Plaintiff further argues the ALJ was incorrect to find his treatment conservative because he "participated in three lengthy physical therapy cycles" and was prescribed Hydrocodone, "which is a narcotic analgesic used to treat moderate to moderately severe pain." *Id.* at 13-14. While he reported improvement with pain medication and physical therapy, Plaintiff contends the ALJ made no showing that he had sustained improvement and "there is nothing in [his] comments to his doctors over time that directly impugns [his] symptom testimony." *Id.* at 14. Finally, Plaintiff argues that, other than referencing long bike rides, the ALJ "did not provide what 'daily activities' [he] was capable of performing or were inconsistent with his symptom testimony." *Id.*

In response, Defendant argues that "by restricting Plaintiff to light work with limited postural activities and the option to alternate between sitting and standing, the ALJ plainly considered and, at a minimum, partially accepted Plaintiff's allegations about his symptoms and functional limitations." Def.'s Mot. at 8. He maintains the ALJ properly rejected Plaintiff's allegations that were inconsistent with the objective medical evidence because, while Plaintiff complained of being unable to perform any meaningful standing, walking, balancing, or lifting, the ALJ noted this was inconsistent with his consistently normal gait and strength and lack of

neurological abnormalities during physical examinations.  *Id.*  Defendant maintains the ALJ properly considered that Plaintiff's treatment program consisted of conservative treatment modalities and that none of his treatment providers advised him to avoid significant standing, walking, or lifting as a form of treatment.  *Id.* at 9.

### 1.    Legal Standard

Congress expressly prohibits granting disability benefits based solely on a claimant's subjective complaints.  *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms, including pain, but statements about pain or other symptoms "will not alone establish" the claimant's disability).  "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  An ALJ is, however, required to make specific credibility findings.  *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc); 42 U.S.C. § 423(d)(5)(A)).  A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant has met the first step and "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Id.* (quoting *Smolen*, 80 F.3d at 1281).  "The

22

ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Courts must not engage in second-guessing, where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record." *Fair*, 885 F.2d at 604. However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Lester*, 81 F.3d at 834); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam), *superseded by statute on other grounds as recognized in Bunnel*, 912 F.2d at 1154 ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

Factors an ALJ may consider in weighing a claimant's credibility include: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (quoting *Light*, 119 F.3d at 792). An ALJ's credibility finding must be properly supported by the record, and sufficiently specific to ensure a reviewing court he did not "arbitrarily discredit" a claimant's subjective testimony. *Id.* at 958 (citing *Bunnell*, 947 F.2d at 345-46).

### 2. Analysis

Here, the Court finds the ALJ's analysis is correct and supported by substantial evidence. First, despite Plaintiff's allegations to the contrary, the ALJ properly rejected his allegations of disability because they were inconsistent with the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms"); *Rollins*, 261 F.3d at 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"). For example, the ALJ specifically noted Plaintiff's complaints of being unable to perform any meaningful standing, walking, balancing, or lifting were inconsistent with his consistently normal (and

unassisted) gait and strength and lack of neurological abnormalities during physical examinations. AR 27, 437-39, 448, 450, 452, 454, 456, 520, 523, 694-95; *see Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (rejecting a claimant's allegations of disability where "neurological and orthopedic evaluations have revealed very little evidence of any significant disabling abnormality" in the extremities or spine); *Molina*, 674 F.3d at 1113 (ALJ properly relied on objective clinical findings to discount claimant's allegations that were inconsistent with medical evidence). Similarly, while Plaintiff alleged disabling pain and that he could not perform physical activity, examinations detected no evidence of muscle atrophy – a finding at odds with his claims of inactivity. AR 27-28, 437, 439, 693-94; *see Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly discounted the claimant's complaints of disabling pain by noting that she did not "exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual"). The ALJ also noted that Plaintiff's treatment records did not corroborate his claims about the frequency of his falls throughout the relevant adjudicatory period. AR 27, 624, 670. In light of this divergence between the objective clinical findings and Plaintiff's subjective complaints, the Court finds the ALJ reasonably discounted his claims about the nature and severity of his symptoms and limitations. *See Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)).

Further, the ALJ determined that the nature and effectiveness of his treatment belied his allegations of disability. *See* 20 C.F.R. § 416.929(c)(3) (after considering consistency with the objective medical evidence, the ALJ considers whether and to what extent the claimant's subjective statements are consistent with "other evidence" in the record, such as treatment, daily activities, and other factors). In particular, the ALJ noted that Plaintiff did not undergo surgical intervention or epidural injections as forms of treatment during the relevant period. AR 27. Instead, his treatment program consisted of conservative treatment modalities, such as outpatient visits, prescription medication, physical therapy, and a recommendation for weight management. AR 27, 722. As the ALJ observed, Plaintiff's treatment providers did not advise him to lie down

during the day or instruct him to avoid significant standing, walking, or lifting as a form of treatment. AR 27-28. The ALJ correctly found that this history of conservative treatment belied his claims of disabling symptoms and physical limitations. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment") (citation omitted); *Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016) (the ALJ properly discredited the claimant's subjective symptom testimony by citing her "conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise").

Moreover, the Court finds the ALJ appropriately rejected Plaintiff's allegations of disability because the treatment records illustrated that conservative treatment modalities alleviated his symptoms. An ALJ properly considers effectiveness of treatment when evaluating symptoms. 20 C.F.R. § 416.929(c)(3)(iv); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability" based on a mental impairment.); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). Plaintiff repeatedly told his treating providers at Del Norte Community Health Center that medication "controlled" his pain and noticeably improved his level of activity. AR 27, 449, 451, 519, 521, 676. He acknowledged to NP Pope in June 2017 that his pain decreased to a "tolerable level of 2/10" with pain medication. AR 721. Additionally, Plaintiff's physical therapy records revealed that he had improved balance, strength, and coordination in left lower extremity, and his treating physical therapists consistently projected continued improvement with ongoing physical therapy. AR 27, 528, 530, 539, 563-64, 624-25, 670-71. Plaintiff reported to his treatment providers in late 2014 and early 2015 that he was able to ride his bicycle, and he denied experiencing any recent history of falls in February 2016. AR 27, 447, 449, 451, 539, 624; *see Tommasetti*, 533 F.3d at 1040 (the ALJ properly rejected the claimant's complaints of disabling pain where the record revealed that he responded favorable to conservative treatment, including physical therapy).

Finally, because substantial evidence supports the ALJ's rejection of Plaintiff's claims about the nature and severity of his symptoms and functional limitations, the Court may not engage in "second-guessing." *See Tommasetti*, 533 F.3d at 1039. Instead, this Court should defer to the presiding ALJ, "who has seen the hearing up close," and affirm the ALJ's evaluation of Plaintiff's subjective symptom testimony. *Biestek*, 139 S. Ct. at 1157*; Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("If the record would support more than one rational interpretation, we defer to the ALJ's decision"). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Because she appropriately discounted Plaintiff's allegations, the ALJ's decision must be affirmed.

**E.      Whether the Presiding ALJ was Properly Appointed**

Finally, Plaintiff argues the ALJ was not properly appointed and lacked authority to decide his case. Pl.'s Mot. at 16. Plaintiff argues this action should be remanded to the Commissioner because the ALJ was not appointed under the Constitution's Appointments Clause at the time of the hearing and thus lacked authority to preside over the matter. *Id.*

"The Appointments Clause prescribes the exclusive means of appointing 'Officers.' Only the President, a court of law, or a head of department can do so." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018) (citing U.S. Const. art. II, § 2, cl. 2). Plaintiff relies on *Lucia*, which held that ALJs of the Securities and Exchange Commission are "Officers of the United States" subject to the Appointments Clause in Article II of the United States Constitution. *Id.* at 2055. But in *Lucia*, the Supreme Court also recognized that to obtain relief based on a challenge to the validity of an ALJ's appointment, the challenge must be timely made. *Id.* ("one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief") (citation and quotation marks omitted). The petitioner's challenge was timely because he "contested the validity of [the ALJ's] appointment before the Commission." *Id.*

Plaintiff here did not raise the validity of the ALJ's appointment at the administrative level or at any time before his present motion. As such, because "Plaintiff failed to make a timely challenge to the validity of the ALJ appointment," and "'[t]o the extent *Lucia* applies to Social Security ALJs, [he] forfeited the issue by failing to raise it during [his] administrative

26

proceedings.'" *Camilli v. Berryhill*, 2019 WL 3412921, at *13 (N.D. Cal. July 29, 2019) (quoting *Hugues v. Berryhill*, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018)); *see also Morrow v. Berryhill*, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019) (same); *Allen v. Berryhill*, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019) (same).

Plaintiff contends he can raise this issue for the first time with the District Court pursuant to the Supreme Court's explanation that claimants need not "exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." Pl.'s Mot. at 18-19 (citing *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). However, in *Sims*, the Supreme Court explicitly noted that "[w]hether a claimant must exhaust issues before the ALJ is not before us." 530 U.S. at 2016. While the Ninth Circuit has not directly spoken on the issue of preserving challenges under *Lucia* in the social security context, it has confirmed the general proposition that a social security claimant must exhaust issues before the ALJ to preserve judicial review. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("In light of the [Supreme] Court's express limitation on its holding in *Sims*, we cannot say that that holding is 'clearly irreconcilable' with our decision in *Meanel*, and *Meanel* therefore remains binding on this court with respect to proceedings before an ALJ."). Therefore, claimants represented by counsel must raise all issues at their administrative hearings to preserve issues on appeal. *Meanel*, 172 F.3d at 1115. Thus, Plaintiff forfeited his claim that the ALJ was not properly appointed under the Constitution for purposes of federal court review.

## VI.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: September 23, 2019

THOMAS S. HIXSON
United States Magistrate Judge